lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| **v.** ) | No.  08-40008-JAR |
| ) | |
| **ISAAC YASS and** ) | |
| **ROBERT ANDREW BLECHMAN,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Robert Blechman's Motion to Exclude Testimony of Forensic Document Examiner (Doc. 52); co-defendant Isaac Yass has joined in the motion (Doc. 66).  The government opposes defendant's motion.  A hearing was held November 10, 2008, at which time counsel for defendant clarified that he was seeking a ruling on the threshold legal issue of whether handwriting analysis is reliable enough to be considered admissible expert testimony.  For the reasons explained in detail below, the Court denies defendant's motion.

*Background*

A First Superseding Indictment was filed on June 11, 2008, alleging that defendant Yass, through a business called Stopco, solicited homeowners going through foreclosure proceedings and offered to stop the foreclosure proceedings without the homeowner having to file bankruptcy.  In exchange for a fee, Yass would file fraudulent bankruptcy petitions, along with

money orders to pay for the filing fee; the debtors' names in the petitions were false or used without authorization.  Yass would then have the homeowner transfer a nominal interest in their home to the debtor, causing an automatic stay in the foreclosure proceeding.  The United States Trustee for the District of Kansas discovered the scheme and identified eleven bankruptcies filed in the District of Kansas that fit the pattern.

On January 28, 2008, Yass reportedly told an FBI agent that everything in the original Indictment, which did not mention co-defendant Blechman, was true.  Yass told the agent that he found an individual to help him with the scheme, but would not give the person's name.  This person would buy the money orders and mail the bankruptcy petitions.  Yass eventually named Blechman, who was charged in the Superseding Indictment with conspiracy to commit mail fraud and aggravated identity theft.  The handwriting on three of the money orders has been identified as Blechman's and a surveillance video obtained from the Los Angeles Post Office shows Blechman purchased a money order submitted with one of the eleven fraudulent Kansas bankruptcies.

*Discussion*

Under Fed. R. Evid. 702, the Supreme Court requires district courts to perform a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[1]  The reliability of expert testimony turns on its status as scientific knowledge.[2]  The district court may determine that expert testimony is reliable by inquiring into the background and qualifications of the expert and asking if "the reasoning or methodology

---

[1] *United States v. Ellis*, 193 F. App'x 773, 777 (10th Cir. 2006) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

[2] *Id.* (citing *Daubert*, 509 U.S. at 590).

underlying the testimony is scientifically valid."[3]  The scientific validity of a test may be established by considering the following factors: "(1) whether a theory has been or can be tested, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has 'general acceptance.'"[4]

A district court must conduct a two-part inquiry to fulfill its gatekeeping role.  First, the court determines whether the proffered testimony has "a reliable basis in the knowledge and experience" of the relevant discipline.[5]  To make such a determination, the court should inquire into the qualifications and background of the expert and ask if "the reasoning or methodology underlying the testimony is factually valid."[6]  "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible."[7]  Second, the court must determine if the testimony is "relevant to the task at hand."[8]

Blechman moves to exclude from evidence the anticipated testimony of Debra Campbell, the government's forensic document examiner, identifying certain handwriting as having been made by him.  Blechman argues that the theories underlying handwriting analysis are not sufficiently reliable to satisfy *Daubert* because: 1) theories and techniques of handwriting comparison have not been sufficiently tested to prove reliability; 2) there has been no objective

---

[3] *Id*. (quoting *Daubert*, 590 U.S. at 592-93).

[4] *Id*. (quoting *Daubert*, 590 U.S. at 593-94).

[5] *Id*. at 778 (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232-22 (10th Cir. 2004)).

[6] *Id*. (quoting *Daubert*, 509 U.S. at 592-93).

[7] *Id*. (quoting *Mitchell v. Gencor Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)).

[8] *Id*. (quoting *Daubert*, 509 U.S. at 597).

peer review of the theories and techniques of handwriting comparison; 3) there is a wide range in the rate of error for handwriting analysis and no standards for controlling the technique's operation; and 4) general acceptance of handwriting analysis exists only within the inner circle of handwriting experts. Defendant seeks to exclude Campbell's testimony in its entirety, including a prohibition against testifying as to similarities between his handwriting and the handwriting on the money orders. In support of his position, defendant cites a number of district court decisions that cast doubt on some of the central tenets of handwriting analysis, in which the courts have either disallowed the handwriting experts from testifying or precluded them from offering an opinion that a specific person authored the writing in question.[9] Defendant also relies on the report of Mark Denbeaux, a law professor at Seton Hall, who has spent years trying to convince the federal courts that handwriting analysis is not a proper subject for expert testimony.[10]

The government responds that Blechman is asking this Court to do what no federal appellate court to address the issue has done—find that handwriting comparison testimony is *per se* unreliable and therefore inadmissible. The Court has reviewed the decisions of the federal appellate courts, including an unpublished Tenth Circuit opinion, which have been unanimous in approving expert testimony in the field of handwriting analysis.[11] Rather than to exclude

---

[9]*See, e.g.*, *United States v. Hidalgo*, 229 F. Supp. 2d 961 (D. Ariz. 2002) (permitting testimony from handwriting analyst, but disallowing analyst from testifying about authorship); *United States v. Saelee*, 162 F. Supp. 2d 1097, 1102-03 (D. Alaska 2001) (disallowing testimony from handwriting examiner).

[10](Doc. 54.) Given the alleged inadequacy and conclusive nature of the government expert's report, Denbeaux focused his report on his criticisms of handwriting analysis in general.

[11]*See United States v. Mornan*, 413 F.3d 372, 380 (3d Cir. 2005) (explaining that "[t]his Court has previously held that handwriting analysis in general is sufficiently technical in nature to be the subject of expert testimony under Rule 702 and the standard articulated by the Supreme Court in *Daubert*[,]"); *United States v. Crisp*,

handwriting analysis as "junk science," as urged by defendant, the Court finds the process of handwriting analysis sufficiently reliable to satisfy *Daubert* and the Federal Rules of Evidence and declines to depart from the clear majority of courts weighing in on the issue. Moreover, despite the uneven treatment of handwriting experts by district courts, every appellate court to have considered the issue of handwriting testimony has held that the expert's ultimate opinion was admissible.[12] Accordingly, defendant's motion is denied. The Court likewise finds that a hearing on this matter is unnecessary until trial, when Ms. Campbell is available and the task before this Court will be to fulfill the rest of its gatekeeping role, if needed.[13]

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Exclude Testimony of Forensic Document Examiner (Doc. 52) is DENIED.

IT IS SO ORDERED.

Dated:  December 19, 2008

---

324 F.3d 261, 269-70 (4th Cir. 2003) (rejecting defendant's challenge that the reliability of handwriting analysis testimony was insufficient to satisfy *Daubert*); *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (rejecting argument "that the field of handwriting analysis lacks sufficient standards and testing to verify that analysts can accurately and definitively identify the author of a questioned document"); *United States v. Jolivet*, 224 F.3d 902, 906 (8th Cir. 2000) (expert allowed to offer opinion that the signatory on the questioned documents was likely defendant); *United States v. Paul*, 175 F.3d 906, 909-11 (11th Cir. 1999) (holding that district court did not abuse its discretion in permitting expert testimony as to authorship); *United States v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir. 1997) (handwriting expert was allowed to testify that the signatures on documents in question were defendant's); *United States v. Velasquez*, 64 F.3d 844, 848-50 (3d Cir. 1995) (government's expert allowed to testify as to the authors of documents, but holding trial court erred by allowing defendant's expert, Professor Denbeaux, to testify regarding criticism of standards in handwriting analysis field); *United States v. Hernandez*, 42 F. App'x 173 (10th Cir. 2002) (unpublished in Federal Reporter; expert allowed to testify as to the similarities between writing on questioned documents and defendant's known exemplars, noting that the exclusion of the expert's ultimate opinion was not before the Court).

[12]*See United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005) (permitting ultimate opinion that the defendant authored the note in queston); *Crisp*, 324 F.3d at 269-70 (allowing ultimate opinion that defendant authored the note); *Mooney*, 315 F.3d at 63 (same); *Jolivet*, 224 F.3d at 906 (allowing opinion that it was "likely" that the document contained the defendant's handwriting); *Paul*, 175 F.3d at 911 (permitting expert testimony that the defendant wrote the extortion note); *Jones*, 107 F.3d at 1161 (allowing testimony that signatures on various documents were the defendant's).

[13]*See United States v. Ellis*, 193 F. App'x 773, 777-78 (10th Cir. 2006).

                                           S/ Julie A. Robinson  
                                          JULIE A. ROBINSON  
                                          UNITED STATES DISTRICT JUDGE