lml

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | )  No.  08-40008-JAR |
| | ) |
| **ISAAC YASS and** | ) |
| **ROBERT ANDREW BLECHMAN,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

On January 16, 2009, a jury found defendants Isaac Yass and Robert Blechman guilty of one count of conspiracy to commit mail fraud and aggravated identity theft in violation of 18 U.S.C. § 371, six counts of mail fraud in violation of 18 U.S.C. § 1341, and six counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  At the conclusion of the government's evidence, and again after the defense rested, defendants moved for judgment of acquittal on all counts of the Superseding Indictment.  The Court reserved ruling on the motions, and defendants now renew and supplement those motions under Fed. R. Crim. P. 29(c)(1) (Docs. 113, 115, 116, 133, 145,149).  Defendants also move for a new trial pursuant to Fed. R. Crim. P. 33 (Docs. 112, 118).  The Court concludes that oral argument would not assist in deciding the issues presented.  For the reasons stated below, the Court grants defendants' motion with respect to the aggravated identity theft and conspiracy to commit aggravated identity theft convictions, denies defendants' motion with respect to the mail fraud and conspiracy to commit mail fraud conviction, and denies defendants' motions for new trial.

## I.     Motions for Judgment of Acquittal

When considering a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, the Court cannot weigh the evidence, or consider the credibility of witnesses.[1]  The Court looks to the record and determines "only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [defendants] guilty beyond a reasonable doubt."[2] Moreover, "'while the evidence supporting the conviction[s] must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt.'"[3]  The Court must defer to the jury's verdict so long as the government's proof meets this standard.[4]  Acquittal is proper only if the evidence implicating defendant is nonexistent or is "so meager that no reasonable jury could find guilt beyond a reasonable doubt."[5]  Under Rule 29(b), if the court reserves ruling on a motion, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

At the close of evidence, defendants moved for judgment of acquittal on all counts of the Superseding Indictment, with particular emphasis on the charges of aggravated identity theft. Defendants both raised a sufficiency of the evidence challenge to the conspiracy and mail fraud convictions.  Defendants have renewed their motions.  The Court will address the separate

---

[1]*Burks v. United States*, 437 U.S. 1, 16 (1978).

[2]*United States v. Vallejos*, 421 F.3d 1119, 1122 (10th Cir. 2005) (internal quotations omitted).

[3]*Id.* (quoting *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994)).

[4]*Id.* (quoting *United States v. White*, 673 F.2d 299, 302 (10th Cir. 1982)).

[5]*White*, 673 F.2d at 301.

charges in turn.

### A.    Aggravated Identity Theft

At the time of defendants' trial, the circuit courts were in disagreement as to the elements

of aggravated identity theft, 18 U.S.C. § 1028A(a)(1), which provides:

> Whoever, during and in relation to any felony violation
> enumerated in subsection (c), *knowingly* transfers, possesses, or
> uses, without lawful authority, a means of identification of another
> person shall, in addition to the punishment provided for such
> felony, be sentenced to a term of imprisonment of 2 years.[6]

Specifically, the circuits were divided as to whether the *mens rea* of "knowingly" modifies only

the verbs "transfers, possesses, or uses" or also modifies the prepositional phrase "of another

person," even though that phrase comes after the adverb phrase "without lawful authority," the

indirect object "a means," and the prepositional phrase "of identification."[7]   At the time of trial,

the issue was pending before both the Tenth Circuit[8] and the United States Supreme Court.[9]   The

Court opted to err on the side of caution, and instructed the jury that the government was

required to prove knowledge as an element of the offense.[10]

---

[6]18 U.S.C. § 1028A(a)(1) (emphasis added).

[7]*Compare United States v. Mendoza-Gonzalez*, 520 F.3d 912, 915 (8th Cir. 2008) (holding that the "knowingly" *mens rea* does not modify "of another person"); *United States v. Hurtado*, 508 F.3d 603, 608-09 (11th Cir. 2007) (same); *United States v. Montejo*, 442 F.3d 213, 215 (4th Cir. 2006) (same), *with United States v. Godin*, 534 F.3d 51, 61 (1st Cir. 2008) (holding that the "knowingly" *mens rea* modifies "of another person"); *United States v. Miranda-Lopez*, 532 F. 3d 1034, 1040 (9th Cir. 2008) (same); *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1246 (D.C. Cir. 2008) (same).

[8]*United States v. Chavez-Quintana*, No. 07-10011-01-WEB, 2007 WL 3171795, at *1 (D. Kan. Oct. 25, 2007) (holding that knowledge that means of identification at issue belonged to an actual person not required), *rev'd*, Case No. 07-3223, 2009 WL 1396808 (10th Cir. May 20, 2009).

[9]*Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009).

[10](Doc. 129, Instructions 23-28) ("The defendant knew that the means of identification, social security number, belonged to another person.").

The Supreme Court resolved the circuit split in *Flores-Figueroa v. United States*,[11] where the Court unanimously held that § 1028A "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person."[12]  Accordingly, this Court was correct in instructing the jury that an aggravated identity theft conviction requires a finding that defendants Yass and Blechman knew that the means of identity they used to file fraudulent bankruptcy petitions belonged to another person., i.e., an actual person.[13]

The evidence at trial showed that defendants filed false bankruptcy petitions in Kansas and used them to stop legitimate foreclosure proceedings in California and Nevada.[14]  Defendant Yass solicited the homeowners and generally dealt with the foreclosure side of the scheme.  Defendant Blechman, a paralegal with training in the area of bankruptcy law, physically filed the false bankruptcy petitions by mailing them to courts in Kansas.

The government presented evidence that eleven false petitions were filed with the Bankruptcy Court in the District of Kansas.  Of these, six utilized social security numbers that each belonged to an actual person.  In addition to social security numbers, the petitions contained addresses that made them falsely appear to be residences in Kansas, when in fact, they were mostly mail service stores.

The government also introduced into evidence a document recovered from Yass's residence titled, "Information on Social Security Number's [sic]," which included an index of

---

[11]129 S. Ct. at 1886.

[12]*Id.* at 1894.

[13]*See id.* at 1893-94 (concluding that the aggravated identity theft provision was intended to provide an enhanced sentence to those who knew the identity they were unlawfully using was of a "real" person).

[14]*See* discussion *infra*, Section II.B.

valid social security numbers by state.[15]  The document describes the social security numbers issued in a given state as well as explains what would constitute an invalid social security number.  For example, the document listed the numbers issued for the State of Kansas began with the first three digits 509 through 515, and stated that a leading number of "9" is suspect, as very few are issued.  Defendant Yass testified at trial, and admitted his use of the document as a sort of "crib sheet" to prepare bankruptcy petitions, but denied that he knew false social security numbers were used on the petitions and stated that he believed defendant Blechman gave him the document in order to ensure there were no false numbers on certain loan paperwork.

The Court finds that a rational jury could not find beyond a reasonable doubt that defendants knew that the social security numbers used in Counts 8 through 13 belonged to another person.  Instead, the government's evidence demonstrated that the social security numbers on the bankruptcy petitions were randomly selected, except for the first three digits indicating the state where issued, without knowing whether the numbers had or had not been issued to any person.  It is clear from the government's evidence that the scheme was not to gain something by stealing another person's means of identification, but to use a social security number that appeared on its face to be appropriate to the state where the bankruptcy petition was filed, and thus avoid detection of the falsity of the filing long enough to accomplish the desired goal of blocking a foreclosure sale in another state.

The Court bases its holding on the following evidence.  First, the names of the debtors in the bankruptcy filings did not match the names of the persons to whom the social security numbers had been issued.  Indeed, two of the six persons to whom numbers had been issued

---

[15]Trial Ex. 1-P.

were children.  Second, at least five other social security numbers used on the false bankruptcy filings in Kansas had never been issued to any person.[16]  Finally, the evidence did not show how defendants might have gained knowledge of a particular person's social security number or whether they were acquainted with any of the persons whose social security numbers they were using.  "That such knowledge might have been difficult to prove is of no moment."[17]

Because no rational jury could have concluded beyond a reasonable doubt that the defendants knew the social security numbers utilized in the bankruptcy filings charged in Counts 8 through 13 belonged to another person, the Court grants judgment of acquittal on those counts.

**B.     Mail Fraud**

In order to convict defendants of mail fraud in violation of 18 U.S.C. § 1341, the government was required to prove (1) defendant knowingly devised or intended to devise a scheme or artifice to defraud or obtain money or property by means of false or fraudulent pretenses, representations or promises; (2) defendant acted with specific intent; (3) use of the mail for the purpose of carrying out the scheme; and (4) the scheme employed false representations that were material or false or fraudulent pretenses, representations, or promises that were material.[18]  The jury was instructed that "good faith" is a "complete defense" to a mail fraud charge.[19]  However, "[a] defendant does not act in 'good faith' if, even though he honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent

---

[16](Ex. 1-HHHH.)

[17]*United States v. Chavez-Quintana*, Case No. 07-3223, 2009 WL 1396808, at*3 (10th Cir. May 20, 2009) (citing *Flores-Figueroa*, 129 S. Ct. at 1893-94) (noting that concerns over the difficulties of proving this knowledge are "insufficient to outweigh the clarity of the text.").

[18](Doc. 129, Instruction No. 20); *see United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001).

[19](Doc. 129, Instruction No.  34.)

pretenses, representations, or promises to others."[20]  The burden of proving specific intent remains with the government.[21]

In his renewed Rule 29 motion, Yass argues that only Blechman was involved in the mailings of the fraudulent bankruptcy petitions, that he was merely associated with Blechman, and that evidence of his involvement in STOPCO's halting of foreclosures is not sufficient to establish specific intent and knowing participation in Blechman's scheme to defraud.  Yass also argues that the evidence shows that he was entitled to a good faith defense.  Defendant Blechman does not articulate any further grounds for relief with respect to the mail fraud verdicts in his supplemental motion.

The government's theory was that defendants engaged in an unlawful scheme involving the filing of fraudulent bankruptcy petitions and unlawful fractional interest transfers, which were sent to trustees to stop lawful foreclosures by invoking the automatic stay provisions of the bankruptcy code.  The government witnesses included the Chapter 13 Trustee, a lawyer who represented a creditor whose lawful foreclosure was stayed by one of the fraudulent bankruptcy petitions, a PACER records custodian, the special FBI agents who investigated the case, AOL and Yahoo records custodians, a United States Bankruptcy clerk, a representative of the Social Security Administration, an investigator and document examiner from the United States Postal Service, and a handwriting expert.  These witnesses laid the foundation for the testimony of Ed Walsh, a Senior Bankruptcy Analyst with the United States Trustees Office, who testified about how the scheme operated.

---

[20]*Id.*

[21]*Id.*

The evidence at trial showed that Yass solicited home-buyers who were subject to lawful foreclosure proceedings, explaining the services that he conducted under the name "STOPCO."[22]  For a monthly cash payment, Yass promised to stop a home-buyer client's foreclosure for up to two years.[23]  The information packet sent to clients stated "We attach your property, (NOT your name) to an EXISTING BANKRUPTCY, and temporarily, (ONE TO TWO (2) YEARS) buy you more time."[24]  Once a client made a deposit to Yass's Wells Fargo account, the client would be provided with a "Short form Deed of Trust and Assignment of Rents," which transferred a fractional percentage of the client's real estate to a fictitious business.  Yass emailed the prepared deeds to the client with instructions that included the addresses of the recorders offices and how much money to take with them.  Once filed, the client sent the file-stamped deed back to Yass.

Blechman created and revised the deeds, putting the form in .pdf and Word format for use by Yass.[25]  Blechman purchased Postal Service Money Orders at a post office in Los Angeles to use as filing fees.[26]  A handwriting examiner testified at trial that he concluded Blechman was the person who purchased and filled out the money orders used as filing fees that were submitted to the Postal Inspection Forensic Laboratory, and he was identified in two still photos as the person who mailed two petitions on the same day.  Blechman mailed the Chapter 13 Bankruptcy

---

[22]*See, e.g.*, Trial Ex. 1-NN, showing that Yass sent out more than 5000 solicitations in October 2007; Trial Ex. 1-PP, showing the service of "Stopping the Auction Sale" with a photo of Yass as a principle in Stopco.

[23]Trial Ex. 1-VVV.

[24]Trial Ex. 1-EEE.

[25]Trial Ex. 1-III.

[26]Trial Ex. 1-ZZ.

Petitions, with the schedules and fees to bankruptcy courts in Kansas and elsewhere.[27]  Six of

these bankruptcies filed in Kansas are the subject of the mail fraud charges, Counts 2 through 7.

Each Chapter 13 Petition used debtors' names that were false, with real addresses that

corresponded to UPS stores or mailboxes.  Each Petition also identified any other name used by

the petitioner within the last eight years.  For example, in the Marvin Earl Stevens bankruptcy,

petitioner was listed as dba "MES Properties";[28] in the Richard Lawrence Taylor bankruptcy,

petitioner was listed as dba "RLT Enterprises."[29]  Blechman would coordinate with Yass so that

the fictional business name receiving the fractional interest in the deed would be included in the

fraudulent Chapter 13 Petition.[30]

Blechman provided Yass with the PACER[31] internet address,[32] and Yass established an

account with PACER.[33]  Yass kept track of the various bankruptcy petition filings to monitor

which cases were dismissed and which were "still alive" that could be used to stop future

foreclosures.[34]  Yass accessed PACER to obtain the various "Notices of Filing" of the fraudulent

bankruptcy petitions.[35]  Yass would then fax the Notice of Filing, along with a copy of the

---

[27]Trial  Exs. 1-F, 1-F-1, 1-G, 1-G-1, showing still photos from the post office security camera showing Blechman mailing two of the bankruptcy petitions.

[28]Trial Ex. 2-B.

[29]Trial Ex. 3-B.

[30]Trial Ex. 1-OOO.

[31]PACER is the acronym for the Public Access to Court Electronic Records. Trial Ex. 1-RR.

[32]Trial Ex. 1-FFF.

[33]*See, e.g.*, Trial Exs. 1-SS and 1-UU showing Yass's account ISO725 at PACER.

[34]Trial Ex. 1-RRR.

[35]Trial Ex. 1-GGGG.

fractional interest deed, to trustees, stopping valid foreclosures.[36]  Several Kansas bankruptcies were used to stop foreclosures on multiple properties; Yass would simply change the address on the deed of trust to match the address of the client.  For example, the evidence identified deeds of trust that show five different addresses for MES Properties; each address listed for MES Properties is in fact the address of the property subject to foreclosure.[37]

Blechman provided Yass with specialized knowledge about bankruptcy procedures, identifying proceedings, keeping him apprised of pending motions for relief from the automatic stay, and advising him when a dismissal would take place in a case.[38]  He advised Yass on when to date an assignment of a deed, which address to use on a deed, and offered to review it for Yass before filing.[39]

The handwriting expert also identified Blechman's handwriting on a money order purchased in the name of Charles Gibbons, which was used to open an uncharged case in Maryland.[40]  Defendant Blechman's Internet Provider ("IP") address appeared on the PACER records showing that he accessed the Charles Gibbons bankruptcy on March 3, 2008, after Yass was arrested.

Defendant Yass testified on his own behalf.  He was born in Jerusalem, Israel, and is a resident alien allowed to perform lawful work while in the United States.  In 2003, Yass employed Irvin Cohen to help him stop the foreclosure of his home.  Yass was so pleased with

---

[36]Trial Exs. 5-B, 5-F.

[37]Trial Exs. 2-F, 2-G, 2-H, 2-I, 2-K.

[38]Trial Exs. 1-KKK, 1-MMM.

[39]Trial Ex. 1-HHH, 1-OOO.

[40]Trial Ex. 1-ZZ-5B.

the results, he started his own mortgage foreclosure stoppage business, STOPCO, in 2005. Yass sent solicitation letters to home owners he determined had received a Notice of Trustee Sale, which included his own Notice of Trustee Sale, and offering to show the homeowner how they could keep their home, as he had kept his. Once the homeowner paid STOPCO a cash deposit, Yass would contact Cohen, who would provide the fractional interest deed for the owner of the property to transfer an interest in their home to a business. Yass would have the owner sign the deed, then deliver the deed to Cohen, who would stop the foreclosure proceedings. Yass testified that STOPCO also used Miki Henschel to assist with stopping foreclosures. When he learned Henschel was trying to make additional profit from clients, Yass reported Henschel to the Los Angeles District Attorney. Apparently, both Cohen and Henchel have been charged with devising similar fraudulent schemes as in this case.

Yass testified that he became acquainted with defendant Blechman after seeing a flyer from Blechman that advertised he was providing services to stop foreclosures. Blechman advertised himself as a paralegal, a licensed realtor, and connected with Michael Sofris, attorney at law. Yass confirmed that Blechman provided him with the website for PACER services, and that he opened an account and gave the user name and password to Blechman. Because of the problems with Henschel, Yass agreed with Blechman that Blechman would provide STOPCO with the services previously provided by Henschel and Cohen. Under this arrangement, however, Yass was to make up the deeds to be signed by the homeowners and fax the notice of bankruptcy filing to the trustee to stop the sale. In order to complete the deeds, Yass needed the name of the company that Blechman had put into bankruptcy, and testified that he thought Blechman was putting "real" businesses that Blechman owned into bankruptcy. Yass testified

11

that Blechman provided him with the names of the company, the case number of the bankruptcy case, and the notice of filing from the bankruptcy court, and that he paid him $500 for each name supplied.  Yass contends that he did not know that Blechman was filing fictitious bankruptcies, and relied on Blechman's professional credentials.

Blechman did not take the stand, but instead offered the testimony of several witnesses who testified as to his good character, his trustworthiness and reputation for honesty.  His employer, attorney Michael Sofris, testified that he specialized in foreclosures and that Blechman solicited business for him.  Sofris testified that Blechman helped people prepare bankruptcy petitions, and merely mailed them to the bankruptcy clerk.

A court must enter judgment of acquittal only where the evidence is insufficient to sustain a conviction.  In recognition of the vast amount of evidence offered by the government, and the jury's right and duty to determine the relative weight and credibility of the evidence, the Court concludes that there is evidence in the record from which a jury could determine that both defendants acted with specific intent and knowing participation in the scheme to defraud and obtain money or property.  Because it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom.  Thus, "[i]ntent may be inferred from evidence that the defendant attempted to conceal activity.  Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted the money to his own use."[41]  Further, "[e]vidence of the schemer's indifference to the truth of statements

---

[41]*United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) (quotation omitted).

can amount to evidence of fraudulent intent."[42]  The evidence, including Yass's testimony, showed how he controlled the STOPCO operation, after learning the ropes from Cohen and Henschel.  The materials provided STOPCO customers stated that Yass would attach the homeowners' property, not their name, to an existing bankruptcy, and buy them more time. While Yass testified that he was acting in good faith in relying on Blechman and thought Blechman was putting his own businesses into bankruptcy, the evidence showed that the fraudulent bankruptcies were filed in the name of individuals, and that Yass accessed the fraudulent bankruptcy filings via his PACER account.  Yass used the dba's in the fraudulent bankruptcies numerous times, changing the address on the deed of trust to match the address of the client.  It was a natural, compelling inference for the jury to find that Yass knew the bankruptcy petitions were fraudulent.

Likewise, the Court finds the government has supplied sufficient evidence with respect to Blechman, whose handwriting was identified on the money orders sent with the fraudulent petitions.  Blechman was identified as the individual mailing the fraudulent petitions from the post office in Los Angeles.  Blechman is a paralegal who worked for a lawyer who specializes in foreclosures.  Yass needed Blechman's expertise and assistance in stopping foreclosures using bankruptcies.  Based on this evidence, the jury could infer that Blechman prepared the fraudulent bankruptcy petitions and caused them to be mailed in furtherance of the scheme.

### C.    Conspiracy

In his renewed Rule 29 motion, defendant Yass specifically argues that the government's evidence is insufficient to support Yass's membership in the conspiracy, and demonstrates that

---

[42]*United States v. Trammell*, 133 F.3d 1343, 1352 (10th Cir. 1998) (quotation omitted).

he was merely associated with defendant Blechman, without actively encouraging or having

knowledge of his fraudulent designs.  Defendant Blechman does not articulate any further

grounds for relief with respect to the conspiracy verdict in his supplemental motion.

The Indictment alleges a conspiracy between defendants Yass and Blechman to commit

mail fraud in violation of 18 U.S.C. § 1341 and aggravated identity theft in violation of 18

U.S.C. § 1028A.  In order to convict defendants of conspiracy under 18 U.S.C. § 371, the

government was required to prove (1) the defendant agreed with at least one other person to

violate the law by violating one or more of the statutes set forth above; (2) one of the

conspirators engaged in at least one overt act furthering the conspiracy's objective; (3) the

defendant knew the essential objective of the conspiracy; (4) the defendant knowingly and

voluntarily participated; and (5) there was interdependence among the members of the

conspiracy; that is, the members, in some way or manner, intended to act together for their

shared mutual benefit within the scope of the conspiracy charged.[43]  "The government may prove

these elements by direct or circumstantial evidence."[44]

As previously stated, when reviewing the sufficiency of the evidence as applied to a

motion for judgment of acquittal, the Court views the evidence in the light most favorable to the

government and determines whether there was sufficient evidence from which a jury could find

the defendant guilty beyond a reasonable doubt.[45]  The Court has reviewed the record in the light

---

[43](Doc. 129, Instruction No. 13); *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir.), *cert. denied*, 525 U.S. 896 (1998).

[44]*United States v. Hanzlicek*, 187 F.3d 1228, 1232 (10th Cir. 1999) (citation omitted).

[45]*United States v. Johnson*, 120 F.3d 1107, 1108 (10th Cir. 1997).

most favorable to the government and, from its review, is satisfied that the evidence established each element of the conspiracy to commit mail fraud charge against each defendant.  Clearly, Yass and Blechman had an agreement whereby Blechman would assist Yass with stopping foreclosures.  Moreover, the evidence is sufficient for the jury to infer that both defendants knew that bankruptcy petitions would be illegally used in the scheme to stop the foreclosures.  As discussed above, the jury could infer that Yass knew about the nature and full extent of Blechman's assistance, and that there was interdependence between the defendants.  Based on the evidence presented by the government, a reasonable jury could find beyond a reasonable doubt that defendants had an agreement to commit mail fraud.

The Court reaches a different conclusion, however, with respect to the government's evidence that defendants conspired to commit aggravated identity theft.  As discussed above, the government's evidence is insufficient to show that defendants knew that the social security numbers used in Counts 8 through 13 belonged to another person.  At best, defendants conspired to use false means of identity of another person in order to carry out their scheme to defraud.  Because the object of the conspiracy as charged was to commit aggravated identity theft, the Court grants defendants' motion with respect to this object of the conspiracy count.

## II.  Motions for New Trial

Fed. R. Crim. P. 33 provides that a motion for new trial may be granted "if required in the interest of justice."  A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution.[46]  The decision whether to grant a motion for new trial is

---

[46]*See United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998).

committed to the sound discretion of the trial court.[47]  Defendant Yass fails to articulate any specific grounds justifying a new trial.[48]  Defendant Blechman raises five grounds for new trial, all of which were raised and ruled upon during the course of trial or prior to trial *in limine* or in a *Daubert* motion.  Defendant's motion does not reassert these issues in any detail, and defendant offers no additional basis as to why these rulings should now be reversed.  Nevertheless, the Court addresses each issue in turn.

### A.      Motion to Sever

The Court considered on two occasions evidence and arguments regarding the issue of separate trials based on antagonistic defenses.  The issue was first raised in a Joint Motion to Sever Trials Based on Antagonistic Defenses[49] filed on the eve of trial.  The Court heard argument at the *in limine* conference, where defendants asserted that they had recently realized they would present antagonistic defenses at trial.  Yass stated that he would testify at trial that Blechman created all of the bankruptcy documents and provided the information contained therein; that he did not know that the information in the petitions was false or that the social security numbers did not match the names on the petitions; and that he believed that Blechman was complying with all requirements of the law and deny knowledge of any fraud.  Blechman stated that he also would testify at trial and say that Yass asked for help preparing bankruptcy petitions for Yass's clients; that when he prepared petitions, Yass provided him with all the

---

[47]*See id.*

[48]Defendant Yass filed a Motion for New Trial (Doc. 112) that requested relief under Fed. R. Crim. P. 33, which was based on the memorandum of point and authorities to be filed by defendant within ten days of the verdicts; defendant did not file such a memorandum.

[49](Doc. 76.)

information; and that Yass prepared many petitions himself and that Blechman trusted that the information provided by Yass was true and accurate. Blechman argued that Yass had made a confession that directly implicates Blechman and contradicts Blechman's theory of defense. If Yass testified at trial, his confession would be admitted without redaction of the references to Blechman. Blechman would then testify and implicate Yass. Both defendants would actively seek to directly incriminate the other and blame the other for the fraudulent petition, claim ignorance of the fraud and attack each other, and the jury may believe neither and convict both. The government opposed any severance, on the grounds that defendants fell short of justifying separate trials for this conspiracy where they were properly joined under Rule 8(b). In addition, the government stated that it would redact Yass's pretrial statement implicating Blechman in the scheme, as required by *Bruton*.

As the Tenth Circuit has explained, a motion for severance based on conflicting defenses triggers a three-step inquiry on the part of the trial court:[50] First, the court must determine whether the defenses presented are "so antagonistic that they are mutually exclusive," so that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other."[51] Defenses are mutually antagonistic if "the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other."[52] Second, "because mutually antagonistic defenses are not prejudicial per se, a defendant must further

---

[50]*United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007).

[51]*Id*. (quotations omitted).

[52]*Id*. (quotations omitted).

show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence."[53]  Third, "if the first two factors are met, the court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration."[54]  After considering these factors, the Court orally denied defendants' motions and the case proceeded to trial.  The Court held that, although defendants' proffered defenses appeared to be antagonistic, it could not find that defendants had demonstrated the requisite prejudice to justify severance.  And, assuming the Court found prejudice, it was outweighed by the judicial economy interests of trying co-conspirators together.

At the close of the government's case, Blechman orally moved for a mistrial and renewed his motion for separate trials, on the grounds that it was clear that there were antagonistic defenses.  Significantly, after hearing argument from Blechman and the government, defendant Yass withdrew his motion to sever.  The Court denied the motions, ruling that Blechman had failed to raise any new arguments to justify the Court reversing its previous ruling.  The trial continued, with defendant Yass taking the stand on his own behalf, where on cross-examination he declined to accuse Blechman of making up the names and social security numbers on the false bankruptcy petitions.  Blechman did not take the stand.

Blechman now moves for a new trial on the grounds that he was entitled to a separate trial from Yass based on their antagonistic defenses.  Blechman continues to argue that as a result of a joint trial, the strongest advocate of his guilt was counsel for Yass and vice versa.  The

---

[53]*Id.* (quotations and alterations omitted).

[54]*Id.* (quotations and alterations omitted).

Court denies defendant's motion for new trial on these grounds.  Blechman does not raise any new claims in his motion.  In fact, his assurance of mutually antagonistic defenses did not materialize, and "amounts to no more than finger pointing."[55]  Yass maintained that he had no idea the bankruptcy petitions were fraudulent, stopping short of accusing Blechman of preparing the false petitions; Blechman presented character witnesses who testified he could not have participated in such a scheme to defraud.  These defenses simply are not so contradictory that the jury must have necessarily disbelieved one to believe the other.  The jury could have believed both of defendants' theories and acquitted them both, but did not.  In addition, the Court gave a limiting instruction before admitting incriminating emails between defendants, explaining that this evidence could only be used against the defendant sending the email, and not the other.

Even if defendants had presented defenses that were sufficiently exclusive and antagonistic, however, Blechman has not established the specific prejudice required at the second analytic step.  Although Blechman argued that prejudice to both defendants from a joint trial became clear as the evidence was presented, he fails to articulate the basis of that prejudice.  "Defendants are not entitled to severance merely because they may have a *better chance* of acquittal in separate trials."[56]  Despite their differing theories of defense, nothing prevented Blechman from presenting evidence or argument to support his theory, even if it was inconsistent with Yass's defense.  Moreover, Blechman's argument is undermined by the significant additional evidence of his guilt.  As previously discussed, the government presented substantial evidence with respect to Blechman's involvement in both the mail fraud scheme and the

---

[55]*United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994).

[56]*Pursley*, 474 F.3d at 766 (quotation and alteration omitted).

conspiracy.  In light of this significant evidence of his guilt, Blechman would be hard-pressed to demonstrate actual prejudice.[57]  Because Blechman has failed to meet his heavy burden of showing prejudice, the Court denies his motion for new trial on these grounds.

### B.    Jury Instructions

In reviewing challenges to jury instructions, the Court must look at the instructions as a whole and determine if the jury likely was misled.[58]  The Court will grant a new trial only if it has "substantial doubt that the jury was fairly guided."[59]  Defendant claims that he is entitled to a new trial because of errors in the jury instructions, as set out by counsel in written objections[60] and during the instruction conference.  Many of defendant's objections parsed language in the Court's stock, non-substantive instructions, and the Court declined to modify these oft-vetted instructions.  Further, many of defendant's requested instructions and language were incorporated into the final instructions, notably the instructions on aggravated identity theft,[61] and evidence of other conspiracies.[62]  The Court overruled defendant's objection to the mail fraud instructions,[63] which was based on *McNally v. United States*,[64] and used the Tenth Circuit

---

[57]*See United States v. Neha*, 301 F. App'x 811, 814-15 (10th Cir. 2008) (citing *United States v. Ray*, 370 F.3d 1039, 1045 (10th Cir. 2004)).

[58]*United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (citing *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993)).

[59]*Id.* (quoting *Mullins*, 4 F.3d at 900).

[60](Doc. 92.)

[61](Doc. 129, Instruction Nos. 23 through 28.)

[62]*Id.* Instruction No. 17A.

[63]*Id.* Instruction Nos. 18 through 21.

[64]483 U.S. 350 (1987).

Pattern Criminal Jury Instructions[65] instead of the Third Circuit Pattern Instructions requested by defendant.  The Court believes its rulings on the jury instructions were correctly decided, fairly and adequately submitted the issues to the jury, and will not revisit them again.

### C.    Evidentiary Rulings/Business Records Exception

A district court has broad discretion to determine the admissibility of evidence.[66]  The appellate court reviews evidentiary rulings for abuse of discretion,[67] not disturbing a trial court's decision absent "a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[68]

Defendant contends that emails and PACER account records were erroneously admitted without the proper foundation and in violation of the rules against hearsay.  Although defendant does not provide details, the Court's review of the record shows that the PACER account records were admitted through Ted Williams, the PACER records custodian.  Blechman objected to the record's relevance and to lack of foundation.  The Court overruled the relevance objection and directed the government to lay more foundation under the business records exception.  After the government laid additional foundation, the Court admitted the records over defendant's objection.

The emails between Yass and Blechman were admitted through the testimony of Ed

---

[65]*See* 10th Cir. Pattern Criminal Jury Instruction Nos. 2.56 (mail fraud elements) and 1.24 (unanimity of theory).  The Court also instructed the jury as to the conjunctive/disjunctive nature of the charge (Doc. 129, Instruction No. 19).

[66]*United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992), *cert. denied*, 507 U.S. 1041 (1993).

[67]*United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

[68]*Talamante*, 981 F.2d at 1155 (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)) (alterations in the original).

Walsh.  Blechman objected on *Bruton* grounds, arguing that the emails were offered as party admissions, not co-conspirator statements, and thus the jury could not consider them separately. The Court admitted the emails, and gave the jury a limiting instruction, explaining that the emails from Yass's email address to Blechman could be used as a statement of Yass against Yass, but not Blechman and conversely, the response emails from Blechman could be used as statements of Blechman against Blechman, but not Yass.

The Court remains convinced that these documents were properly admitted under Fed. R. Evid. 803(6) and 804(b)(3), and that a new trial is not warranted on these grounds.

### D.      Testimony of Forensic Document Examiner

Defendant asserts that he is entitled to a new trial because the Court should have excluded the testimony of the forensic document examiner under Fed. R. Crim. P. 702. Blechman moved to exclude from evidence the testimony of Debra Campbell, the government's forensic document examiner, identifying the handwriting on the money orders sent in with the fraudulent bankruptcy petitions as his.[69]  The Court issued a written opinion denying defendant's motion, rejecting his argument that handwriting analysis is "junk science" and joining the clear majority of courts in finding the process sufficiently reliable to satisfy *Daubert* and the Federal Rules of Evidence.[70]  There were no further objections to the examiner's testimony at trial.  The Court believes its rulings on defendant's motion was correctly decided and will not revisit them.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motions for Judgment of Acquittal (Docs. 113, 115, 116, 133, 145, 149) are GRANTED with respect to the

---

[69](Doc. 52.)

[70](Doc. 75.)

verdicts on aggravated identity theft, Counts 8 through 13 and conspiracy to commit aggravated identity theft, Count 1, and DENIED with respect to the verdicts on mail fraud, Counts 2 through 7, and conspiracy to commit mail fraud, Count 1.

**IT IS FURTHER ORDERED** that defendants' Motions for New Trial (Docs. 112, 118) are DENIED.

Dated:  July 6, 2009

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE